Royal DL Bond, Esq. SBN: 346254
**BOND LAW LEGAL GROUP**
30141 Antelope Rd. D228
Menifee, CA 92584
1(844) 476-9254| 1(844) 464-0904
royal@bondlawlegal.com

Attorney for Plaintiff CHRISTOPHER D. SAWYER

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

|  |  |
|---|---|
| CHRISTOPHER D. SAWYER, an individual, | **CASE NO:** |
|  | **VERIFIED CIVIL COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES** |
| Plaintiff, | **[Pursuant to 42 U.S.C. §1983]** |
| vs. | |
|  | **JURY TRIAL DEMANDED** |
| RIVERSIDE COUNTY; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; CHAD BIANCO; DENNIS VROOM; FLAKES; RIVERSIDE UNIVERSITY HEALTH SYSTEM; and DOES 1 thru 10, inclusive, | |
| Defendant(s). | |

**COMES NOW PLAINTIFF** CHRISTOPHER D. SAWYER, by and through his

Attorney, Royal DL Bond, Esq., and for his Complaint against the above-named DEFENDANTS, alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1343(c) (Civil Rights).

2. The State law claims for relief are within the supplemental jurisdiction of this Court, pursuant to 28 U.S.C.§1367 – because all these issues arise from a common nucleus of operative facts and/or the same transaction or occurrence.

3. PLAINTIFF's claims herein arise out of an incident involving the County of Riverside Sheriff's Department, in the County of Riverside, State of California and within this Judicial District; as such, venue is proper in this District.

4. Pursuant to California Code of Regulations, Article 1 - Administrative Remedies for Inmates and Parolees, Section 3483 - Grievance Review, Plaintiffs have exhausted all Administrative Remedies.

5. Government Claims Act (Gov. Code §§ 800 / 900 et. seq.). Per this requirement and as delineated in the statutes (also sometimes referred to as the "California Torts Claims Act"), PLAINTIFF timely presented his government claim to the DEFENDANTS in accordance with the statutes – a condition precedent arguably required to the maintenance of any cause of action against a public entity. PLAINTIFF presented a timely governmental tort claim with the County of Riverside, Office of the Clerk of the Board of Supervisors in accordance with Government Code §945.6.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. PLAINTIFF has exhausted all "available administrative remedies". For remedies that may be in question, those remedies were "effectively unavailable" to PLAINTIFF.

## THE PARTIES

7.   Plaintiff Christopher D. Sawyer ("PLAINTIFF"), a natural person of mature age, is a private individual within the meaning of California law and is a Citizen of the State of California, and at all times relevant hereto is a pretrial detainee/inmate in the County of Riverside, State of California.  PLAINTIFF is currently confined in the custody of the Riverside County Sheriff's Department.

8.   Defendant Riverside County ("COUNTY"), is a county located in the southern portion of the U.S. state of California.  Co-Defendants are employed by Riverside County. Municipal departments within Riverside County are Banning, Beaumont, Blythe, Calimesa, Cathedral City, Corona, Desert Hot Springs, Hemet, Indio, Menifee, Murrieta, Palm Springs, Riverside, and Riverside Community College.  The COUNTY is being sued in its official capacity.

9.   Defendant Riverside County Sheriff's Department ("SHERIFF"), was at all times relevant to this matter, employed by Riverside County, a law enforcement agency having custody and control over PLAINTIFF at all times mentioned in this Complaint. SHERIFF is the employer for co-DEFENDANTS, as well as, the entity responsible for inmates. The SHERIFF is being sued in its official capacity.

10. Defendant Sheriff Chad Bianco ("BIANCO") was at all times relevant to this matter a Sheriff, employed for the SHERIFF, Cois Byrd Detention Center ("CBDC"). BIANCO is legally responsible for all operations that occur in all facilities under the COUNTY's jurisdiction. Also, BIANCO is legally responsible for the oversight of the medical treatment of confined inmates. Custom of the SHERIFF was under the supervision and enforcement of BIANCO, at all times relevant to this action.  BIANCO acted under color of law and personally participated in the actions complained herein. BIANCO is being sued in his official and individual/personal capacity.

11. Defendant Sheriff Dennis Vroom ("VROOM") was at all times relevant to this matter a Sheriff, employed for the SHERIFF's Department, CBDC.  VROOM is being sued in his official and individual/personal capacity. Custom of the SHERIFF's DEPT.

was under the supervision and enforcement of VROOM, at all times relevant to this action.  VROOM acted under color of law and personally participated in the actions complained herein.

12. Defendant Riverside University Health System ("UNIVERSITY"), employs medical personnel and is legally responsible for providing adequate medical treatment to inmates in the custody of the SHERIFF.

13. PLAINTIFF is informed and believe, and on that basis allege, that during the times mentioned herein, DEFENDANTS collectively, and each of them are also the agents, employees, partners, joint venturers, representatives, coconspirators, and assigns of their co-  DEFENDANTS and were, as such, acting within the scope, course, and authority of such agency, employment, partnership, joint venture, representation, conspiracy, and/or assignment, unless the context states otherwise.

14. If PLAINTIFF is currently ignorant of any true names and capacities, whether individual, corporate, associates or otherwise, of any unnamed DEFENDANT(s) to be rightfully sued herein, PLAINTIFF will seek leave amend this complaint to allege their true names and capacities when ascertained – per FRCP 15(c) (Relation Back of Amendments).

15. DEFENDANTS and each of them, and at times mentioned herein have been, the officers, agents, employers, employees, partners, joint venturers, coconspirators, representatives, surrogates, and assigns of one another, and in doing the acts, omissions and maintaining the conditions, herein described, DEFENDANTS, and each of them, separately and in concert, have been and are acting under color of state law. Said acts and omissions were committed and conditions were maintained by DEFENDANTS personally and through actions of their agents and subordinates unless otherwise specified. Each Defendant is being sued in either their individual and/or official capacity.

16. All individuals named as DEFENDANTS shall hereinafter be referred to collectively as "DEFENDANTS" which term shall be used to mean DEFENDANTS

and each of them, unless otherwise specified.

## **STATEMENT OF FACTS**

17. This Complaint arises from PLAINTIFF having been blindsided and knocked unconscious, during a violent assault that occurred over the jail telephone at Smith Correctional Facility ("Banning") in Riverside County, Jail dayroom 17/C, on or about August 23, 2022.

18. PLAINTIFF was sent to Riverside County Hospital to undergo medical treatment.  As soon as, PLAINTIFF gain consciousness and discovered he needed surgery, he made constant requests from nurses and doctors at the hospital to receive immediate surgery and was denied.  PLAINTIFF was returned to Banning, where he continued to request from SHERIF's Duties to receive immediate surgery and was denied.

19. PLAINTIFF was diagnosed with a broken jaw in two places, and the bone and gum separated. However, despite PLAINTIFF's injuries, PLAINTIFF was given subpar medical care, sent back to Banning, and forced to wait for a surgery date, when surgery should have been immediate.

20. PLAINTIFF began submitting grievances to receive medical care and as a result, he was placed in Administrative Segregation "the hole" with a broken jaw. PLAINTIFF was not admitted into the hospital for any extended period of time for proper medical care until PLAINTIFF underwent surgery, approximately 4-6 days after the assault.

21. After surgery and upon PLAINTIFF's return to Banning, he was placed on Administrative Segregation, again, for approximately two (2) weeks by himself with no interaction with other inmates, no contact with family, and suffered what was akin to loss of privileges, and locked down 23-24 hours a day with no access to fresh air, a view of sky, and windows; denied daily recreation; denied adequate programs, *inter alia*.

22. .   Despite not breaking any rules. Administrative Segregation is a fancy name for the proverbial hole "Isolation."  PLAINTIFF then began to file grievances to rectify being placed in the hole. While in Isolation and after PLAINTIFF began submitting grievances, PLAINTIFF was given access to a telephone, which was done in an attempt to pacify him.

23. Approximately two (2) weeks after PLAINTIFF's surgery, PLAINTIFF was sent to F-Pod at Banning, General Population; despite still having his mouth wired shut. While in General Population, PLAINTIFF began to experience swelling of his jaw. At which time, PLAINTIFF put in a, Sick Call Slip, to see the NURSE.

24. While waiting to receive medical care, the swelling in PLAINTIFF's jaw only became worse.  When PLAINTIFF asked for antibiotics, he was denied and given mouth wash.  PLAINTIFF was repeatedly denied medical care.

25. Finally, a week after PLAINTIFF submitted a Sick Call Slip, PLAINTIFF received medical treatment and he was examined by the same NURSE; this time with significant swelling and excruciating pain exacerbated by the denial of adequate medical care and/or treatment.

26. PLAINTIFF was housed back in General Population, with no clearance from his doctors, and hardware still in his mouth. During PLAINTIFF's time in General Population, his jaw got infected severely.

27. Subsequent to his examination by the NURSE, PLAINTIFF was sent to the hospital where he was admitted due to a serious infection in his jaw that could have led to PLAINTIFF's death. PLAINTIFF was in the hospital for approximately 9-11 days, where he was placed on IV antibiotics, and a PICC line (Peripherally Inserted Central Catheter) implanted into his jaw for the next two (2) months.

28. Upon PLAINTIFF's discharge from the hospital, he was transferred to CBDC, where he was finally placed into the medical unit, housed in A1/10 medical unit, due to "reasons" of PICC line, and screws and wire in his mouth.

29. While PLAINTIFF was in the medical unit, he learned from medical staff that while "incarcerated" with a major injury and hardware in his mouth, PLAINTIFF is required to not be placed back in general population until his hardware is removed and medically cleared by doctors, which did not occur.

30. PLAINTIFF will indeed need to receive another surgery after released from DEFENDANTS' custody.

31. At CBDC, under information and belief, there are a series of inmates suffering health fatigue, injuries, and death, due to DEFENDANTS' employees' purposeful lack of medical care for inmates' health, safety, and livelihood.   Malicious actions such as these, undoubtedly cause the death of inmates.

32. The infection almost killed PLAINTIFF; this was due to lack of adequate medical care, immediately following the assault, and DEFENDANTS making a conscious decision in electing to bypass placing PLAINTIFF in the medical unit where he could and would have received adequate medical treatment, after surgery.

33. In an attempt to receive proper medical care, PLAINTIFF suffered approximately ten (10) weeks of Isolation.  During these ten (10) weeks, PLAINTIFF made daily request with housing jail deputies, medical staff for antibiotics, vitamins, and to be transferred to a medical unit to care for his jaw after surgery.

34. In addition, PLAINTIFF submitted six (6) grievances from November 2, 2022 to April 16, 2023, about medical care for his jaw and stating that he was in serious pain, which were not adequately handled nor ever or responded to.

35. DEFENDANTS were fully aware of PLAINTIFF's gravely medical condition of such injuries and lack of medical care, due to his grievances and letter to the County Board of Supervisors.  PLAINTIFF's irreparable medical injury is attributable to DEFENDANTS' conduct; events which PLAINTIFF had no control over given his status as a pretrial detainee.

36. DEFENDANTS, and each and every one of them, are fully aware that when caring for inmates in their custody, they must give them sufficient and adequate medical

care commensurate with what the Constitution requires and cannot engage in putting the cost of treatment over an inmate's health.

37. As a result of the violations committed against PLAINTIFF, contrary to and in violation of his clearly established Constitutional Rights, PLAINTIFF unnecessarily suffered a life-threatening infection, and continues to suffer debilitating pain, headaches, swelling of the jaw, weight loss, fatigue, and overall diminished health. Due to PLAINTIFF initially not receiving proper medical treatment, he will have to undergo surgeries at future dates.

38. PLAINTIFF's life is traumatized for life as a direct result of DEFENDANTS' custom, which PLAINTIFF is subjected to daily under DEFENDANTS' jurisprudence.

39. PLAINTIFF has ongoing mental health issues to include, acute Post Traumatic Stress Disorder symptoms, paranoia, nightmares, and trouble consuming food.

40. It is unclear at this juncture what future injuries or suffering PLAINTIFF will experience due to DEFENDANTS' actions.

## A. **DEFENDANTS' Custom**

41. DEFENDANTS' custom has been in effect since PLAINTIFF's confinement status, approximately 2022, and under information and belief, for over thirty-three (33) years.  BIANCO and VROOMAN are the top policy and decision makers of SHERIFF and who failed in whole to abate this custom of regularly violating inmates' Civil Rights, intentionally to keep them in line for their own personal gain.

42. DEFENDANTS are all aware of this custom based on past grievances, lawsuits, and investigations conducted on them from outside agencies of same or similar custom in the past thirty-three (33) years. See *Raymundo Ortega Ramirez v. County of Riverside, et al.* (Mar. 20, 2023) Case No. 5:21-cv-01155-GW-ADS); *Gray v. County of Riverside* (June 12, 2007), No. 06-56645; *Bodnar v. Riverside County Sheriff Department* (May 13, 2016), No. E063288.

43. VROOMAN notifies the SHERIFF of any underlying lawsuits, when filed and have opportunity to take action and fix issues with reasonable resources.

44. DEFENDANTS are grossly negligent to the substantial risk of inmates' health, safety, and living conditions under their custom, which has affected PLAINTIFF in many ways.

45.     DEFENDANTS encourage, accept, and cover up subordinates' failure to decrease harsh, cruel, unusual, and punitive living conditions; under DEFENDANTS' supervision, inmates have consistently suffered serious injuries, death in some cases, due to subordinates failing to provide adequate and timely medical care, mental health care, and protection for inmates well-being; inmates are regularly denied emergency-medical and mental healthcare services in adequate time and sometimes medical services in general; doctors or officials delay or deny giving necessary mental, medical, or dental care, or a medical diet. *Grieveson v. Anderson*, 538 F.3rd 763, 779 (7th cir. 2008) (1.5 day delay in treating broken nose); *Smith v. Knox County Jail*, 666 F.3d 1037 (7th cir. 2012) (5 days delay providing emergency medical care); *Brown v. District of Columbia*, 514 F. 3rd 1279 (D.C. Cir 2008); (2 months delay on medical care); *Harrison vs. Barkley*, 219 F. 3rd 132, 138 (2nd cir. 2000) (one year delay for dental care); *Byrd v. Wilson*, 701 F.2d 592 (6th cir. 2013) (Medical diet).

## COUNTS

### COUNT I

**MONELL CLAIM UNDER SECTION 1983, CHAPTER 42,**
**UNDER THE UNITED STATES CODE**
**(Against All DEFENDANTS)**

46. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

47. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law.  (West v. Atkins (1988) 487 U.S. 42, 48 [108 S.Ct. 2250, 101 L.Ed.2d 40].)

48. "[A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . ."  (Monell v. New York City Dept. of Social Services (1978) 436 U.S. 658, 691–692 [98 S.Ct. 2018, 56 L.Ed.2d 611].)

49. The elements of a Monell claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. Dean v. Wexford Health Service, Inc., 18 F.4th 214, 235 (7th Cir. 2021).

50. The inadequacy of DEFENDANTS' police training is the basis for the deliberate and conscious indifference to the rights, safety, and welfare of PLAINTIFF, in total violation of Plaintiffs' Constitutional Rights.  DEFENDANTS' unlawful misconduct demonstrates a municipal "policy" or "custom", which is the moving force behind the Constitutional violations, as follow:

51. PLAINTIFF's Substantive Due Process and Procedural Due Process were violated with a conscious indifference to the deprivation of Plaintiffs' life, liberty, and/or property for no justifiable or sufficient purpose, and without proper procedures followed.

52. PLAINTIFF's rights to proper medical treatment, immediately following the assault that resulted in PLAINTIFF's jaw being broken and having the liberty to submit grievances without retaliation, are fully protected by the United States Constitution; yet,

DEFENDANTS denied PLAINTIFF his rights, subjecting PLAINTIFF to future mental and physical medical uncertainty.

53. PLAINTIFF unnecessarily suffered life-threatening infection and continues to suffer debilitating pain, headaches, swelling of the jaw, weight loss, fatigue, and overall diminished health. PLAINTIFF will have to undergo surgery at a future date.

54. PLAINTIFF has ongoing mental health issues to include, acute Post Traumatic Stress Disorder symptoms, paranoia, nightmares, and trouble consuming food.

55. PLAINTIFF has suffered psychological, emotional, and non-economic damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

56. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

### A. **Failure to Train**

57. Failure to train reflects deliberate indifference to the Constitutional Rights of its inhabitants." 489 U.S. at 392.  Supervisory liability can attach when the "'failure to train amounts to deliberate indifference to the rights of persons with whom subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." Id. at 1397, quoting in part *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990).

58. PLAINTIFF claims that he was deprived of his Civil Rights as a result of SHERIFF, BIANCO, VROOM, and UNIVERSITY's failure to train their employees. To establish this claim, PLAINTIFF must prove all of the following:  (1) that SHERIFF, BIANCO, VROOM, and UNIVERSITY's training program was not adequate to train its officers and medical staff; (2) that SHERIFF, BIANCO, and UNIVERSITY knew because of a pattern of similar violations or it should have been obvious to it that the inadequate training program was likely to result in a deprivation of the PLAINTIFF's

Civil Rights; (3) that BIANCO, VROOM, and NURSE violated PLAINTIFF's Civil Rights; and (4) that the failure to provide adequate training was the cause of the deprivation of PLAINTIFF's Civil Rights.

59. There exists a failure to train when in this situation based on the policies that govern DEFENDANTS' conduct did not prevent the violations of law from repeatedly occurring against PLAINTIFF.  DEFENDANTS' policies did not prevent them from having a deliberate indifferent to the substantial medical risk it would cause PLAINTIFF, mentally and physically.

60. DEFENDANTS are aware of these types of violations of law against inmates based on the grievances received demonstrating that there is a pattern, a custom that has developed or a custom that has always been a part of its practices.

61. BIANCO, VROOM, and NURSE were all aware that PLAINTIFF's Civil Rights were being violated, but for the failure of training, they were not adequate to handle the usual and recurring situations which they must deal with on a regular basis.

62. COUNTY, SHERIFF, BIANCO, VROOM, and UNIVERSITY failed to properly train staff and that failure to train was a substantial part in causing injury to PLAINTIFF.

**B.  Failure to Supervise**

63. A failure to supervise exists when (1) the employee is either unfit or incompetent to perform the work for which he or she was hired, (2) the Defendant knew or should have known that the employee was unfit or incompetent and that it created a particular risk of harm to others, (3) the employee's unfitness or incompetence caused Plaintiff harm, and (4) the Defendant's negligence in supervising the employees was a substantial factor in causing the Plaintiff harm.

64. As the aforementioned as demonstrated, COUNTY, SHERIFF, BIANCO, VROOM, and UNIVERSITY failed to properly train, thus, has failed to properly

supervise; especially, after receiving grievances of Constitutional violations and the same violations repeatedly occurring.

65. Failure to properly supervise is the substantial factor in DEFENDANTS providing improper medical care, causing PLAINTIFF a life-threatening infection in his jaw and future damages.

## COUNT II

**FIRST AMENDMENT CONSTITUTIONAL RIGHTS**
**RETALIATION CLAIM**
**UNDER 42 U.S.C.§1983**
**(Against SHERIFF, BIANCO, and VROOM)**

66. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

67. To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

68. PLAINTIFF's Substantive Due Process and Procedural Due Process were violated with an indifferent and conscious disregard to the deprivation of PLAINTIFF's life, liberty, and/or property for no justifiable or sufficient purpose, and without proper procedures followed.

69. Retaliation was promoted and executed against PLAINTIFF when he exercised his First Amendment Right to submitted grievances, a protected activity, pertaining to PLAINTIFF's need for proper medical treatment and pertaining to DEFENDANTS placing PLAINTIFF in the hole for approximately ten (10) weeks, subjecting him to cruel and unusual punishment, after jaw surgery, denying proper medical care, denying him of his privileges, all without justification and proper procedure, which created a chilling affect onto PLAINTIFF.

70. After PLAINTIFF's released from the hospital as a result of a life-threatening infection, he was transferred to CBDC, where again, PLAINTIFF was denied proper medical care.

71. PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

72. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

73. DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.

## COUNT III

**VIOLATION OF THE EIGHTH
AMENDMENT CONSTITUTIONAL RIGHTS
UNDER 42 U.S.C.§1983
(Against All DEFENDANTS)**

74. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

75. Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishments."  In order to prove the defendant deprived the plaintiff of this right, the plaintiff must prove the following additional elements by a preponderance of the evidence: (1) [the plaintiff faced a substantial risk of serious harm] [the plaintiff faced a serious medical need]; (2) the defendant was deliberately indifferent to that [risk] [medical need], that is, the defendant knew of it and disregarded it by failing to take reasonable measures to address it; and (3) the [act[s]] [failure to act] of the defendant caused harm to the plaintiff.

76. The medical treatment that PLAINTIFF received was inadequate. *Ancata v. Prison health services, Inc.*, 769 F.2d 700, 704 (11th cir. 1985).

77. PLAINTIFF was denied proper medical treatment, placed in general population without doctors' orders and where his jaw became seriously infected.  Based on PLAINTIFF's filing grievance he was placed in the hole, subjected to cruel and unusual punishment, locked down 23-24 per day, denying him of his privileges, without justification and proper procedure, which created a chilling affect onto PLAINTIFF.

78. After PLAINTIFF's jaw surgery, DEFENDANTS, and each of them, made a conscious decision in electing to bypass placing PLAINTIFF in the medical unit where he could and would have received adequate medical treatment.

79. As a result of PLAINTIFF submitting grievances, he was sent to Isolation and during approximately ten (10) weeks of Isolation and after jaw surgery, PLAINTIFF made daily request with housing jail deputies, medical staff for antibiotics, vitamins, and to be transferred to a medical unit to obtain medical care for his jaw. When PLAINTIFF asked for antibiotics, he was denied and given mouth wash.  PLAINTIFF was denied medical care.

80. DEFENDANTS were deliberately indifferent when an easier or less efficient treatment plan was chosen for PLAINTIFF. *Chance v. Armstrong*, 143 F. 3rd 698, 703 (2d cir. 1998).

81. As a direct and proximate result of the aforementioned conduct of the DEFENDANTS, PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

82. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

83.   DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to the PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.

## COUNT IV

**VIOLATION OF THE FOURTEENTH
AMENDMENT CONSTITUTIONAL RIGHTS
UNDER 42 U.S.C.§1983
(Against All DEFENDANTS)**

84. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

85.   No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

86.   The Due Process Clause of the Fourteenth Amendment is the source of an array of Constitutional Rights.

87.   PLAINTIFF was denied his Procedural and Substantive protections, freedom of speech, freedom from cruel and unusual punishment, freedom against retaliation, such as:  Improper medical care; denial of medical requests; frequent denial of grievance responses; non adherence to grievance policy; placed in Isolation without any rules being broken; locked down 23-24 hours per day with no access to fresh air, a view of sky, and windows; denied daily recreation; denied adequate programs, *inter alia*.

88.   As a direct and proximate result of the aforementioned conduct of the DEFENDANTS, PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

89.   DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

90.   DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to the PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.

**COUNT V**

**MEDICAL MALPRACTICE**
**UNDER 42 U.S.C.§1983**
**(Against DEFENDANT UNIVERSITY)**

91. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

92. To do so, four legal elements must be proven: (1) a professional duty owed to the patient; (2) breach of such duty; (3) injury caused by the breach; and (4) resulting damages.

93. Professional duty owed to PLAINTIFF:  The doctors and other medical professionals have a legal duty to use reasonable skill, knowledge, and care in diagnosing and treating illness and injuries. Though even where there is no special duty of care, California law imposes a general duty of care.

94. Breach of legal duty:  UNIVERSITY and the NURSE breached their legal duty to use reasonable skill, knowledge, and care in diagnosing and treating PLAINTIFF.

95. Injury caused by the breach:  As a result of the Breach, PLAINTIFF obtained a life-threatening infection and is subjected to future surgery(ies).

96. The actions of DEFENDANTS were not supported by legitimate medical judgment. DEFENDANTS forced PLAINTIFF, an inmate/patient at all times mentioned herein, to be inappropriately housed in General Population after having jaw surgery and still having screws and wire in his mouth.  Failure of DEFENDANTS to properly medically treat PLAINTIFF led to a life-threatening infection.

97. Also, based on PLAINTIFF being denied adequate medical care and treatment, he is irreparably harmed, mentally and physically.

98. DEFENDANTS were deliberately indifferent to a serious medical need in violation of PLAINTIFF's Fourteenth Amendment Rights to the United States Constitution.

99. PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

100. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

101. DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to the PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER 42 U.S.C.§1983
**(Against All DEFENDANTS)**

102. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

103. A cause of action for Infliction of Emotional Distress must plead facts demonstrating (1) extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme emotional distress and (3) Plaintiff's injuries were actually and proximately caused by the Defendants' outrageous conduct.

104. DEFENDANTS engaged in conduct described herein of their own volition, with the intention of – or reckless disregard of – the probability of causing severe or extreme emotional distress to PLAINTIFF.

105. PLAINTIFF's rights to speak up against the lack of proper medical care; cruel and unusual punishment after submitting grievances, which is a fully protected activity by United States of America Constitution was denied.

106. As a result from submitting grievances, DEFENDANTS placed PLAINTIFF, an inmate patient with a broken jaw, first in Segregation "the hole" on two instances, then after surgery, placed PLAINTIFF into general population without doctors' order where he sustained a life-threatening infection, *inter alia*.

107. PLAINTIFF continues to suffer trauma, mental injury, as well as, physical injury because of DEFENDANT's conduct.

108. As a direct and proximate result of the aforementioned conduct of the DEFENDANTS, PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

109. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

110. DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to the PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.

COUNT VII

DECLARATORY RELIEF

(Against All DEFENDANTS)

111. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

112. "[D]eclaratory relief is designed in a large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." *Meyer v. Sprint Spectrum L.P.*, (2009) 45 Cal.4th 634, 648.

113. An actual controversy has arisen and now exists between PLAINTIFF and DEFENDANTS, concerning their respective rights and duties under the United States Constitution.

114. PLAINTIFF contends, while incarcerated in COUNTY jails, DEFENDANTS have violated PLAINTIFF's civil rights protected under the United States Constitution, such as:  Improper medical care; denial of medical requests; frequent denial of grievance responses; non adherence to grievance policy; placed in Isolation without any rules being broken; locked down 23-24 hours per day with no access to fresh air, a view of sky, and windows; denied daily recreation; denied adequate programs, *inter alia*.

115. PLAINTIFF maintains his position that DEFENDANTS violated PLAINTIFF's Civil Rights due to PLAINTIFF exercising protected activities under the United States Constitution.

116. PLAINTIFF therefore request a judicial determination of the rights, obligations, and interest of the parties with regard to PLAINTIFF's Civil Rights protected under the United States Constitution, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations, and interests with regard to this issue.

117. PLAINTIFF requests a decree declaring that PLAINTIFF is to be free from cruel and unusual punishment; free to exercise protected activities, such as submitting grievances without retaliation and timely responses; adequate medical care; , *inter alia*.

**PUNITIVE DAMAGES**

118. As a consequence of all the DEFENDANTS' wrongful conduct, as set forth herein, constitutes malicious conduct involving the denial of PLAINTIFF's protected activity, *inter alia*, while DEFENDANTS were acting under color of law. DEFENDANTS are liable and PLAINTIFF is entitled to punitive damages which PLAINTIFF seeks judgment of this Court.

119. PLAINTIFF damages are a result of intentional, malicious, reckless, oppressive, and/or fraudulent actions directly perpetrated by the DEFENDANTS and/or actions imputed to the DEFENDANTS through their training and custom.

120. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of PLAINTIFF.

121. DEFENDANTS were acting under the color of state law, when they denied PLAINTIFF his privileges and protections secured by the United States Constitution – as All DEFENDANTS acting as law-enforcement officials during the course of their actions.

122. PLAINTIFF intends to show that the factors the jury may consider in determining the amount(s) of punitive damages, which should be awarded include:

     a. The nature of the wrong committed by DEFENDANTS;

     b. The character of DEFENDANTS' conduct;

     c. The degree of culpability of DEFENDANTS;

     d. The situation and sensibilities of the parties concerned; and

     e. The extent to which DEFENDANTS' conduct offends a public sense of Justice and propriety.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF respectfully prays for judgment against DEFENDANTS as follows:

1. Non-Economic Damages:  $1,000,000.00, jointly and severally;

2. Treble Damages in the amount of $3,000,000.00, jointly and severally;

3. For Punitive Damages in the amount of $1,000,000.00, jointly and severally;

4. For pre-Judgment and post-judgment interest as permitted by law, jointly and severally;

5. For Attorney's Fees and Costs of this action; and

6. Such further or additional relief as the Court deems proper.

## **JURY DEMAND**

PLAINTIFF demands a trial by jury on all claims so triable.

Dated:  February 26, 2024                     Respectfully submitted,

**BOND LAW LEGAL GROUP**


By:_____
        Royal Bond, Esq.,
        Attorney for PLAINTIFF

1
2
3

## **VERIFICATION**

4

I, Christopher D. Sawyer, am the PLAINTIFF in the above-entitled matter. I

5

have read the foregoing VERIFIED CIVIL COMPLAINT FOR EQUITABLE RELIEF

6

AND DAMAGES and hereby verify that the matters alleged therein are true, except as

7

to matters alleged on information and belief, and, as to those, I believe them to be true

8

and correct.

9

I declare under penalty of perjury under the laws of the United States and the

10

State of California that the foregoing is true and correct.

11

Executed on February 26, 2024, at Menifee, California.

12
13
14
15

By:__/s/Christopher D. Sawyer_____

Christopher D. Sawyer,
PLAINTIFF

16
17
18
19
20
21
22
23
24
25
26
27
28

---